# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | |
|---|---|
| **WILLIAM KERNS,** | |
| Plaintiff, | Case No. 3:16-cv-00076-RV-EMT |
| *v.* | DISTRICT JUDGE VINSON |
| **LAMOT INDUSTRIES, LLC, and RBL ENTERPRISES, LLC** | MAGISTRATE JUDGE TIMOTHY |
| Defendants. | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment on the following issues:

(1) whether Plaintiff was covered under the Fair Labor Standards Act,

(2) whether Plaintiff was exempt from FLSA coverage, (3) whether RBL

Enterprises bears successor liability for Lamot Industries' violations,

and (4) whether the Defendants have any evidence or law to support

certain of their affirmative defenses.

## INTRODUCTION AND BACKGROUND

The Defendants, Lamot Industries and RBL Enterprises, are alter

egos of their principal, Ryan B. Lamot. Mr. Lamot, along with his wife

Alisha Lamot, together manage and carry on the business of distributing Kirby-branded vacuum cleaners.

William Kerns worked for one or both of the Defendants from June 9, 2015 until the day he was fired, February 25, 2016. He was named "service manager," but in practice he was a low-level office worker whose job it was to unpack incoming product, organize it for shipment into the field, and mind the shop. (Ex. 3, Kerns Decl. ¶¶ 3-6, 9-10, 12.) Occasionally he served as an errand boy, driving to buy supplies for the office and picking up inventory. (Ex. 2, A. Lamot Dep. 46:19-47:4; Ex. 3, Kerns Decl. ¶ 10.)

For fulltime work, Mr. Kerns was paid only $300 or $350 a week. He never received any overtime pay from the Defendants despite working many weeks over 40 hours. In some of these weeks, he worked so much that his pay fell below the federal and state minimum wages ($7.25 and $8.05, respectively).

The Defendants admitted they cut his hours and took away his key to the office immediately after they got a pre-suit demand letter

from counsel. (Ex. 1, R. Lamot Dep. 134:1-135:6.) They restored his hours the very day they got a letter from Plaintiff's counsel warning about retaliation as a new cause of action. (Ex. 1, R. Lamot Dep. 138:7-9 ("restored his hours immediately . . . A: As soon as I got this letter.").) Then, they "wrote him up" on some spurious work rule violations—the first employee they had *ever* written up (Ex. 2, A. Lamot Dep. 60:25-61:13), and all of the writeups coming only *after* Plaintiff's FLSA demand letter. (*See also* Am. Ans., ECF No. 14, ¶ 28 (conceding written notices were given after Plaintiff pressed his FLSA claims).) A timeline of relevant events was initialed by Mr. Lamot throughout his deposition. (Ex. 4, R. Lamot Dep. Ex. 1; *see* Ex. 1, R. Lamot Dep. 10:24-11:12, 58:25-59:14, 136:23-137:8 (agreeing to contents of timeline).)

It's indisputable, to Plaintiff, that he was fired in retaliation for exercising his FLSA rights. But retaliation is not what this motion is about; Plaintiff acknowledges there will be another side of that story for the jury. This motion seeks to establish liability, as a matter of law,

because the Defendants can come forth with no genuine disputes of any material facts.

Plaintiff repeatedly asked Defendants to consider stipulating to at least some of these liability issues, but they refused. Certain of their arguments and assertions plainly have no basis in law, but Defendants keep asserting them. Plaintiff asks the Court to narrow the issues for trial by granting this motion for summary judgment on several issues.

## LEGAL STANDARDS

Rule 56 governs motions for summary judgment and the Court and parties are well-familiar with the standard.

This action, pleaded under the FLSA, also has an independent claim arising under the Florida minimum wage laws. Florida has adopted federal law on coverage and exemptions, so this motion does not discuss Florida law specially. However, summary judgment is sought under Florida law as well for identical reasons.

**ARGUMENT**

**I.    Plaintiff is entitled to summary judgment on FLSA coverage.**

The core liability issue of whether or not the FLSA covered the employer/employee relationship here, and thus whether the Defendants were obligated to provide the benefits of the FLSA, cannot be seriously disputed.

There is no dispute that Kerns was *employed* by the Defendants. The depositions of Mr. and Mrs. Lamot establish that, as well as documentary evidence such as paystubs and W-2's. The question is whether the FLSA covered this employment relationship. The FLSA covers the relationship if either the employee or the enterprise are engaged in interstate commerce. *Blake v. Batmasian*, __ F. Supp. 3d ___, 2016 WL 3342322, at *3 (S.D. Fla. June 13, 2016).

**A.    Plaintiff was engaged in interstate commerce.**

Mr. Kerns was plainly an employee engaged in interstate commerce. First, it was Defendants' business to be a distributor of Kirby vacuum cleaners. (Am. Ans., ECF No. 14 ¶ 15.)

Within that business, Mr. Kerns received Kirby vacuum cleaners, sent to his employer from out of state, and processed those shipments for use inside Florida and for distribution outside Florida. (Ex. 2, A. Lamot Dep. 34:1-9 (from out of state); Ex. 3, Kerns Decl. ¶ 7 (from out of state); Ex. 2 at 36:12-14 (shipped outside Florida); Ex. 3 ¶ 8 (shipped outside Florida).) At times, Mr. Kerns would play a role in interstate transportation, fetching shipments of vacuum cleaners from the local freight terminal. (Ex. 3 ¶¶ 4, 6.) Mr. Kerns processed the shipments by unpacking the vacuum cleaners and loading them into the cars of sales staff who sold them into the field.

There's no serious factual or legal question that this makes Mr. Kerns an employee engaged in interstate commerce or, in the words of the statute, "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Accordingly, the FLSA applies to Mr. Kerns and his relationship with the Defendants and the Court should grant summary judgment on that basis.

**B.     Each Defendant was an enterprise engaged in interstate commerce.**

Enterprise coverage under the FLSA applies only to an enterprise

which:

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated);

29 U.S.C. § 203(s)(1)(A); *see also Jones v. Freedom Rain, TLC*, 401 F.

App'x 409, 411 (11th Cir. 2010).

On the first prong, there can be no serious dispute that the

Defendants were engaged in interstate commerce; as discussed above,

they are distributors of vacuum cleaners coming from out of state.

On the second prong, requiring an annual gross volume of at

least $500,000 in sales, the testimony of Mrs. Lamot establishes that

amount. She is the Defendants' "administrator" and manages sales

records and bills. (Ex. 2, A. Lamot Dep. 18:20-19:1.) The undisputed

facts are:

- The company sells an average of 50 units per month. (Ex. 2, A. Lamot Dep. 35:6-8.)

- The average selling price is about $1,600 per unit. *Id.* 35:9-24.

- Fifty units a month, times twelve months in a year, times $1,600 per unit, equals $960,000.

- Mrs. Lamot agreed that annual gross revenue was at least $900,000. *Id.* 36:3-11.

The Court is also respectfully directed to the argument below

regarding successor liability—based on Lamot Industries's "shutdown"

and the same-day establishment of RBL Enterprises to carry on the

same exact trade. Because RBL Enterprises is, at the time of this

writing, only about nine months old, if there is any argument that a

*full year's* sales must exceed $500,000, then Lamot Industries's sales

should be imputed to it. An employer cannot continually evade FLSA

enterprise liability by simply "shutting down" and reopening as

something else right before selling its 500,000th dollar of product.

*   *   *

As discussed, Mr. Kerns can show FLSA coverage on either ground. The Court should enter summary judgment on both grounds.

## II.    Plaintiff is not exempt from the FLSA.

Even where coverage lies, an employer may claim exemption from the statute. Exemptions must be claimed and determined specifically, on an employee-by-employee basis. *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1271-72 (M.D. Ala. 2004).

In this action, Defendants specifically pleaded that the Plaintiff is exempt from the coverage of the FLSA, but did not raise the specific exemption in their answer. (Am. Ans., ECF No. 14, at 5.) Under Rule 8, this averment of a specific defense ought to have been pleaded with sufficient particularity to make it plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007).[1] Here, it was implausible—and impossible—to see that Mr. Kerns could be exempt from the coverage of the FLSA.

---

[1] *But see Smith v. City of New Smyrna Beach*, No. 6:11-CV-1110-ORL-31, 2011 WL 6099547, at *1 (M.D. Fla. Dec. 7, 2011) ("While affirmative defenses may not have to meet the *Twombly/Iqbal* standard, they must be more than boilerplate.").

So Plaintiff served an interrogatory asking Defendants to identify which exemptions apply. The only responsive answer to the interrogatory was a bare statutory cite: "29 U.S.C.A. § 213(b)(11)." (Ex. 5 and 6, each Defendant's Resp. to Pl.'s 1st Interrog. No. 4.) Defendants did not answer the part of this interrogatory asking them to state the specific factual basis on which the exemption was claimed, other than to make erroneous argument.

That statute, section 213(b)(11), applying to "any employee employed as a driver or driver's helper," requires two things: (1) that the employee be "compensated for such employment on the basis of trip rates, or other delivery payment plan," and (2) that the Secretary of Labor himself approve the payment plan.

This exemption doesn't apply. Kerns was paid a flat amount per week, not on the basis of a trip rate. (Ex. 9, Kerns paystubs; Ex. 1, A. Lamot Dep. 39:22-40:5 (salary between $200 and $350 a week); Ex. 3, Kerns Decl. ¶ 3.) A trip rate would have required Kerns to get paid X amount of dollars per trip or per mile. And no one at the Defendants

contacted the Department of Labor for specific approval on Mr. Kerns's

pay plan. (Ex. 2, A. Lamot Dep. 28:24-29:7 (no consultation with

anyone about this exemption).)

Defendants' position on the FLSA exemption has been a moving

target, because they have *informally* asserted two other exemptions.

Discovery is closed and Defendants should not have a chance to

change the answer they stated four times in their interrogatories. But

just to lay any exemption issue to rest, here are the two other

exemptions Defendants and their counsel have advanced:

- **Kerns was "a manager."** Lamot Industries' interrogatory response no. 5 makes this deficient case: "To the best of Alisha's understanding, in the State of Florida, 'managers' are exempt from overtime wages." (Ex. 5, Lamot Industries Resp. to Interrog. No. 5.) And Mrs. Lamot's own testimony establishes that she declared Kerns exempt on the basis of nothing more than that. (Ex. 2, A. Lamot Dep. 27:3-16 ("he's a manager, so, therefore, he's exempt from overtime").)

  But Mr. Kerns was not a "manager." His job duties did not involve supervising or managing anybody else in the company. (Ex. 1, R. Lamot Dep. 105:17-20; Ex. 3, Kerns Decl. ¶ 12.) The Defendants claim this was a valid basis for exempting Mr. Kerns from the FLSA, but they are wrong, and their ignorance of the law does not excuse them.

- **Motor carrier exemption.** On May 13, defense counsel stated in an e-mail, "We have a good faith belief that the local driver/drivers helper exception and possibly the interstate motor carrier provisions could apply . . . ."

  But Defendants never put the interstate motor carrier provision into an answer or discovery response. It is set out at 29 U.S.C. § 213(b)(1), exempting (from the overtime statute *only*) "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service."

  In other words, it applies to employees whose driving of heavy vehicles can be regulated by USDOT *for safety reasons*. *See* 29 CFR § 782.2(a). For that reason, the exemption only applies if the employee drives vehicles weighing greater than 10,000 pounds. *Roche v. S-3 Pump Serv., Inc.*, 154 F. Supp. 3d 441, 448 (W.D. Tex. 2016).

  This exemption doesn't apply because the Defendants conceded that Mr. Kerns never drove such a heavy vehicle. (Exs. 7 and 8, Defendants' Resp. to Pl's 1st RFA No. 4; Ex. 3, Kerns Decl. ¶ 11.)

Defendants cannot show any valid exemption to FLSA coverage, and summary judgment should be granted for Mr. Kerns and against them on this basis as well.

### III.   RBL Enterprises is the successor to Lamot Industries for purposes of the FLSA.

Federal employment law establishes a doctrine of successor liability for enterprises carrying on the same business and using the same plant. In this case, RBL Enterprises claims to be a totally new company from Lamot Industries, and disclaims all of Lamot Industries's liability. In reality, RBL is a sham entity set up to evade certain liabilities, and the Defendants are using this sham to evade some of their liability to Mr. Kerns.

This is a relevant issue because for most of his employment, Mr. Kerns was an employee of Lamot Industries. Mr. Lamot testified that RBL Enterprises was started up on December 1, 2015. (Ex. 1, R. Lamot Dep. 22:2-21.) If successor liability isn't established, Mr. Kerns may not be able to obtain full recovery, because Mr. Lamot claims that Lamot Industries is now defunct (and openly admits it has skipped out on other of its debts).

## A.     The federal common law provides successor liability in employment and labor actions.

Generally, corporations are not responsible for the liability of entities they succeed. However, where a claim involves a federal right which is based on employment law, the federal law of successor liability steps in. *Teed v. Thomas & Betts Power Solutions, L.L.C.*, 711 F.3d 763, 764 (7th Cir. 2013).

The Eleventh Circuit has not decided whether successor liability applies to FLSA cases. However, "every other court to consider the issue has concluded that it does." *Glausier v. A+ Nursetemps, Inc.*, No. 5:11-cv-Oc-416-10PRL, 2015 WL 2020332, at *5-6 (M.D. Fla. May 1, 2015). *See also Robinson v. Ultimate Sports Bar, LLC*, No. 1:12-CV-2311-TWT, 2014 WL 2050516 (N.D. Ga. May 19, 2014) (applying doctrine in an FLSA case). The basis for successor liability is the FLSA's important remedial purpose assuring minimum wages "to those workers on the low end of the labor market." *Glausier*, 2015 WL 2020332 at *5. The doctrine applies in cases where, absent successor liability, owners could extinguish their liability through corporate sales, "and the

workers would be powerless to stop it." *Valdez v. Celerity Logistic, Inc.*,

999 F. Supp. 2d 936, 940 (N.D. Tex. 2014).

The Fifth Circuit and others have employed a nine-factor test for

successor liability. Although such multi-factor tests are sometimes

burdensome to apply, this formulation of the test incorporates the

motivating remedial policy and has been followed by courts in our

circuit. The test is:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor;
>
> (2) the ability of the predecessor to provide relief;
>
> (3) whether there has been a substantial continuity of business operations;
>
> (4) whether the new employer uses the same plant;
>
> (5) whether he uses the same or substantially the same work force;
>
> (6) whether he uses the same or substantially the same supervisory personnel;
>
> (7) whether the same jobs exist under substantially the same working conditions;

>   (8) whether he uses the same machinery,
>   equipment, and methods of production; and
>
>   (9) whether he produces the same product.

*Rojas v. TK Comm'ns.*, 87 F.3d 745, 750 (5th Cir. 1996).

The Northern District of Georgia adopted a more-streamlined version of the same test in *Robinson* that focused, in part, on "continuity in operations and work force of the successor and predecessor employers." *Robinson*, 2014 WL 2050516 at *4. That court found the continuity-in-operations element established where the plaintiff alleged use of the same business location, same equipment, and same phone number. *Id*.

The Court should hold that successor liability is available to Mr. Kerns.

## B.   RBL Enterprises is a successor to Lamot Industries, for purposes of Mr. Kerns's claims.

Having established that the law affords such relief, Mr. Kerns asserts there is no genuine issue of material fact: that RBL Enterprises is the successor, for FLSA purposes, to Lamot Industries. Although the

Defendants will assert that they are separate creatures for purposes of Florida corporation law, they cannot show any facts *that are relevant to the federal legal standard* which would defeat successor liability. Accordingly, summary judgment is appropriate.

Here are the facts: Lamot Industries was in existence from April 2012 until about December 1 or 15, 2015. (Ex. 2. A. Lamot Dep. 15:7-9 (opened); *id*. 36:21-24 (closed on Dec. 15); Ex. 1, R. Lamot Dep. 21:9-22:6) (closed on Dec. 1).) As Ryan Lamot put it:

> **Q.** Was there—was there a transition period that lasted days and weeks or was there a cutover where on one day everything changed?
>
> **A.** One day everything changed.

(Ex. 1 at 22:15-18.)

(The Lamotses disagreed on the exact date they made their cut-over. That is all the more reason to believe there was substantial continuity in operations.)

One of the expressed reasons for starting a "new" company was so that Ryan Lamot could evade unpaid rent, and other debts, that he

owed in the name of Lamot Industries. (Ex. 1, R. Lamot Dep. 40:2-12
(did not pay all of its rent); *id.* at 37:23-39:9 (Lamot Industries owes
money to an "unknown company" that Mr. Lamot cannot remember
the name of); Ex. 2, A. Lamot Dep. 17:22-18:12 (did not pay its back
rent; "had other debts that it had not paid"; "most" debts were "never
paid").)

But in "starting" the "new company" RBL Enterprises, Mr. Lamot
carried over a great deal of plant and business. RBL Enterprises, like
Lamot Industries, carries on the same business of being a Kirby
vacuum cleaner distributor. (Am. Ans., ECF No. 14 ¶ 15.) And evidence
shows RBL Enterprises uses the same:

- Employees—including Mr. Kerns and the Lamots. (Ex. 1, R.
  Lamot Dep. 43:7 - 9 ("Q. And you carried over at least one
  employee; correct? A. Yes.").

- Stock and inventory of products for sale. (Ex. 2, A. Lamot
  Dep. 38:4-20). In fact, Mr. Lamot holds title *personally,* not
  in the name of any company. (Ex. 2 at 39:5-11 ("Ryan owns
  it").)

- Vehicles. (Ex. 1, R. Lamot Dep. 42:4-13 ("a red van").)

- Computers. *Id*. at 43:14-44:6 ("Yeah, I'm sure.").

- Office furniture. *Id.* at 44:7-11.

- Business management software, which is called BizTrack. *Id.* at 44:1-6 ("Yes, still use the same system.").

- Payroll system. (Ex.9, Kerns paystubs from identical system; only the company names are different.)

In other words, RBL Enterprises used the same business plan and physical plant as the successor bar in *Robinson*. Nothing changed about the nature of the business, Mr. Kerns's job, or the companies' owners. Applying the *Rojas* factors, factors (3) through (7)—relating to continuity of operations—are indisputably established. Factors (1) and (2), relating to the predecessor's ability to provide relief and the successor's knowledge of the claims, are also met.

In fact, Mr. Kerns's argument on those factors is strong, stronger here than in *Robinson* and other successor cases, because here, the owners of Lamot Industries and RBL Enterprises are **identical:** Ryan Lamot is the sole owner of both. (ECF Nos. 8 and 9, corporate disclosure statements.) Mr. Kerns isn't trying to tax a new owner with

an old owner's debts; Mr. Lamot is the man behind both entities (which he named after himself).

Both LLCs are just alter egos of Mr. Lamot. For evidence of that, the Court can rely on the admission that rather than the Defendants themselves, Mr. Lamot *personally* owns the companies' inventory. (Ex. 2, A. Lamot Dep. 39:5-11.) This fact further undercuts any assertion that the LLCs have separate legal character or are distinct for FLSA purposes. While Mr. Lamot may observed certain state-law formalities—namely forming a new LLC—these formalities are to be *set aside* for purposes of federal successor liability in the employment context.

Lamot and his companies can point to no facts which distinguish the two separate Defendants from each other when viewed through the lens of federal employment law. Accordingly, summary judgment in favor of Kerns should be entered on the issue of whether RBL Enterprises succeeded to the liabilities of Lamot Industries.

**IV.   Certain of Defendants' affirmative defenses have no merit and there is no evidence to support them.**

Finally, Mr. Kerns seeks summary judgment on several conclusorily-pleaded affirmative defenses of both Defendants (which filed a unified, singular answer, ECF No. 14). These defenses, and brief argument, are:

**Aff. Def. No. 1.** This affirmative defense argues that Mr. Kerns "fail[ed] to state a claim . . . for which relief may be granted." This defense is procedurally invalid as it should have been presented in a motion filed under Rule 12(b)(6) prior to the Defendants' answering. Also, the substance of the defense—that Mr. Kerns was unclear as to which company was his employer—is vitiated by the arguments on successor liability just made.

**Aff. Def. No. 2.** Same as with the previous defense.

**Aff. Def. No. 3.** This defense claims "exclusions, exceptions," etc. that are "permissible under the FLSA." The answer never identified them, and as previously stated, the Defendants never came forward with any entitlement to an exemption during discovery.

**Aff. Def. Nos. 5, 6, 7, and 8.** These defenses all essentially assert

that Mr. Kerns himself is responsible for the Defendants' own illegal

pay practices in that he failed to mitigate his damages, or ratified their

illegal conduct. But in the absence of a bona fide dispute, an employee

cannot waive his own right to be paid in accordance with the FLSA—

even in a writing. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945).

It is absurd to place the legal burden to comply with a remedial

employment statute on the employee. Moreover, the regulations

implementing the FLSA place the duty to maintain accurate records of

time worked directly on the employer, 29 CFR § 516.2(a), and the

Defendants admitted they kept *none*. (Exs. 10 and 11, Defendants'

Resp. to Pl's 2nd RFA No. 8.)

### CONCLUSION AND RELIEF SOUGHT

The Plaintiff accordingly seeks an order entering summary

judgment as argued above and ordering that the following are deemed

established:

- That the FLSA covered the employment relationship
  between him and both Defendants.

- That the Defendants can claim no exemption from the FLSA.

- That RBL Enterprises is the successor to Lamot Industries for purposes of this action.

And also asks the Court to rule:

- That the Defendants' affirmative defenses numbered 1, 2, 3, 5, 6, 7, and 8 fail as a matter of law, or fail because there is no genuine issue of material fact that could support a jury finding in favor of the Defendants on these defenses.

- That these defenses are struck from the action.

## CERTIFICATE UNDER LOC. R. 7.1

This is a motion for summary judgment seeking to establish the Defendants' liability as a matter of law. As such, Loc. R. 7.1(D) arguably applies because it is a motion that would "determine the outcome of a case or claim."

However, Plaintiff's counsel can certify that many attempts to resolve these issues by stipulation were made, and rejected.

Specifically:

- At the April 27, in-person Rule 26(f) conference (affirmative defenses).

- In a call and letter on June 3 (FLSA coverage issue, no exemptions, successor liability).

23

- In a call and follow-up e-mail on June 9 (no exemptions).

- In a letter on June 22 (FLSA coverage, no exemptions).

- In person on June 29, immediately after Mr. Lamot's deposition (FLSA coverage, no exemptions, successor liability).

- In an e-mail on July 22 (no exemptions).

- In a letter on August 22 (FLSA coverage, no exemptions, successor liability).

- In other in-person, phone, or written conferences.

Defendants have not entertained resolution of any of the issues raised on this motion. Plaintiff's counsel have made ample efforts to resolve them.

Respectfully submitted,

 /s/ William F. Cash III
William F. Cash III (Fla. Bar No. 68443)
Brandon L. Bogle (Fla. Bar No. 52624)
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
Phone: 850-435-7059
bcash@levinlaw.com
bbogle@levinlaw.com
*Counsel for William Kerns*