**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**WILLIAM KERNS,**

    Plaintiff,

       *v.*

**LAMOT INDUSTRIES, LLC, and**
**RBL ENTERPRISES, LLC**

    Defendants.

Case No. 3:16-cv-76-RV-EMT

DISTRICT JUDGE VINSON

MAGISTRATE JUDGE TIMOTHY

**PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Mr. Kerns moves for summary judgment on the following issues:

(1) whether he was covered under the Fair Labor Standards Act,

(2) whether he was exempt from FLSA coverage, (3) whether RBL

Enterprises bears successor liability for Lamot Industries' violations,

and (4) whether the Defendants can support certain affirmative

defenses.

**INTRODUCTION AND BACKGROUND**

The Defendants, Lamot Industries and RBL Enterprises, are alter

egos of their principal, Ryan B. Lamot. Mr. Lamot, along with his wife

Alisha Lamot, together manage and carry on the business of distributing Kirby-branded vacuum cleaners.

William Kerns worked for one or both of the Defendants from June 9, 2015 until the day he was fired, February 25, 2016. He was employed as a "service manager," but in practice he was a low-level office worker whose job it was to unpack incoming product, organize it for shipment into the field, and mind the shop. (Ex. 3, Kerns Decl. ¶¶ 3-6, 9-10, 12.) Occasionally he served as an errand boy, driving to buy supplies for the office and picking up inventory. (Ex. 2, A. Lamot Dep. 46:19-47:4; Ex. 3, Kerns Decl. ¶ 10.)

For fulltime work, Mr. Kerns was paid only $300 or $350 a week. He never received any overtime pay from the Defendants despite working many weeks over 40 hours. In some of these weeks, he worked so much that his pay fell below the federal and state minimum wages ($7.25 and $8.05, respectively).

The Defendants admitted they cut his hours and took away his key to the office immediately after they got a pre-suit demand letter

from counsel. (Ex. 1, R. Lamot Dep. 134:1-135:6.) They restored his hours the very day they got a letter from Plaintiff's counsel warning that retaliation was a new cause of action. (Ex. 1, R. Lamot Dep. 138:7-9 ("restored his hours immediately . . . A: As soon as I got this letter.").) Then, they "wrote him up" on some spurious work rule violations—the first employee they had *ever* written up (Ex. 2, A. Lamot Dep. 60:25-61:13), and with all of the writeups coming only *after* Plaintiff's FLSA demand letter. (*See also* Am. Ans., ECF No. 14, ¶ 28 (conceding written notices were given after Plaintiff pressed his FLSA claims).) A timeline of relevant events was initialed by Mr. Lamot throughout his deposition. (Ex. 4, R. Lamot Dep. Ex. 1; *see* Ex. 1, R. Lamot Dep. 10:24-11:12, 58:25-59:14, 136:23-137:8 (agreeing to contents of timeline).)

Plaintiff was clearly fired in retaliation for exercising his FLSA rights. But retaliation is not what this motion is about. This motion seeks to establish liability, as a matter of law, because the Defendants can come forth with no genuine disputes of any material facts. Plaintiff asks the Court to narrow the issues for trial by granting this

motion for summary judgment on several issues. If granted in full, the trial would be on damages only.

## LEGAL STANDARDS

Rule 56 governs motions for summary judgment and the Court and parties are well-familiar with the standard.

This action, pleaded under the FLSA, also has an independent claim arising under the Florida minimum wage laws. Florida has adopted federal law on coverage and exemptions, so this motion does not discuss Florida law specially. All references to the FLSA in this motion should be read as including Florida law also.

## ARGUMENT

### I.    Plaintiff is entitled to summary judgment on FLSA coverage.

There is no dispute that Kerns was employed by both Defendants. The question is whether the FLSA covered this employment relationship. Defendant Lamot Industries has conceded FLSA coverage. (Ex. 13.) RBL Enterprises has not.

The FLSA covers an employment relationship if either the employee or the enterprise are engaged in "interstate commerce." *Blake v. Batmasian*, 191 F. Supp. 3d 1370, 1374 (S.D. Fla. 2016).

## A.    Plaintiff was engaged in interstate commerce.

Mr. Kerns was plainly an employee engaged in interstate commerce. The Feb. 13, 2017 deposition of RBL Enterprises makes that exceedingly clear: RBL's business involved the transport of goods across state lines, and "Mr. Kerns was directly involved with that business." (Ex. 12, RBL Enters. Dep. 10:11-20; *see also id.* 10:11-11:15.)

That testimony alone carries the entire issue. But for more evidence, Mr. Kerns also submits:

It was RBL Enterprises's business to be a distributor of Kirby vacuum cleaners. (Am. Ans., ECF No. 14 ¶ 15.) Within that business, Mr. Kerns received Kirby vacuum cleaners sent to his employer from out of state, and processed those shipments for use inside Florida and for distribution outside Florida. (Ex. 2, A. Lamot Dep. 34:1-9 (from out of state); Ex. 3, Kerns Decl. ¶ 7 (from out of state); Ex. 12, RBL Enters.

Dep. 10:21-11:2 (from out of state); Ex. 2 at 36:12-14 (shipped outside Florida); Ex. 3 ¶ 8 (shipped outside Florida).) At times, Mr. Kerns would play a role in interstate transportation, fetching shipments of vacuum cleaners from the local freight terminal. (Ex. 3 ¶¶ 4, 6.) Mr. Kerns processed the shipments by unpacking the vacuum cleaners and loading them into the cars of sales staff who sold them into the field.

There's no serious question that these facts made Mr. Kerns an employee engaged in interstate commerce or, in the words of the statute, "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Accordingly, the FLSA applied to Mr. Kerns and his relationship with RBL Enterprises. The Court should grant summary judgment to Mr. Kerns on coverage as to both Defendants.

### B. Each Defendant was an enterprise engaged in interstate commerce.

If the Court finds for Mr. Kerns on the coverage issue on the basis he was an individual working in interstate commerce, then this

section can be skipped over. But if the Court does not find for Mr.

Kerns on that basis, Mr. Kerns argues that he was also covered by the

FLSA while working for RBL Enterprises under the FLSA's "enterprise

liability" standard.

Enterprise coverage under the FLSA applies only to an enterprise

which:

> (i) has employees engaged in commerce or in the
> production of goods for commerce, or that has
> employees handling, selling, or otherwise
> working on goods or materials that have been
> moved in or produced for commerce by any
> person; and

> (ii) is an enterprise whose annual gross volume
> of sales made or business done is not less than
> $500,000 . . . ;

29 U.S.C. § 203(s)(1)(A); *see also Jones v. Freedom Rain, TLC*, 401 F.

App'x 409, 411 (11th Cir. 2010).

On the first prong, there is no dispute that RBL Enterprises was

engaged in interstate commerce as discussed above.

On the second prong—requiring an annual gross volume of at

least $500,000 in sales—RBL Enterprises also admits to that amount.

> **Q.** Just speaking today, looking back on 2016, all of 2016, would you be able to agree that RBL's gross receipts were in [ex]cess of $500,000?
>
> **A.** Yes.

(Ex. 12, 10:4-7; *see also* Ex. 13.)

Why is this an issue before the Court? Because RBL Enterprises denies that its annual, full-year 2016 sales qualify it for enterprise coverage under the FLSA. RBL argues enterprise liability only attaches as of the moment it sells its 500,000th dollar of goods. (Ex. 13.)

First of all, as addressed in the previous section, this argument is moot, because Mr. Kerns is covered individually.

But more to the point, RBL is just wrong. The law does not say that an employer who sells more than $500,000 in goods in a year only becomes subject to enterprise liability on that day in the calendar year when it does so. An employer cannot perpetually evade FLSA enterprise liability by simply "shutting down" and reopening as "something else" right before selling its 500,000th dollar of product.

Mr. Kerns has searched in vain for caselaw either supporting or refuting RBL's argument, probably because it is not a serious argument that any court has had to address. If this were the law, employers could play games by setting up "new companies" every time they were close to the threshold. Theoretically, an enterprise with $50 million in annual sales could establish 101 separate entities a year—if it were dogged enough in its aims—and evade coverage by distributing its sales among each. It is not a serious position to take, and it is just not consonant with the FLSA's remedial goals.

*     *     *

As discussed, Mr. Kerns can show FLSA coverage on either ground. The Court should enter summary judgment on both.

## II.   Plaintiff is not exempt from the FLSA.

Even where coverage lies, an employer may claim exemption from the statute. Exemptions must be claimed and determined on an employee-by-employee basis. *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1271-72 (M.D. Ala. 2004).

In this action, Defendants specifically pleaded that Mr. Kerns is exempt from FLSA coverage, but did not raise any specific exemption in their answers—likely because they did not investigate applicable exemptions. (Am. Ans., ECF No. 14, at 5.) Under Rule 8, this averment of a specific defense ought to have been pleaded with sufficient particularity to make it plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007).[1] Here, it was implausible—and impossible—to see how Mr. Kerns could be exempt from the coverage of the FLSA.

So Plaintiff served an interrogatory asking Defendants to identify which exemptions apply. The only response to that interrogatory was a bare statutory cite: "29 U.S.C.A. § 213(b)(11)." (Ex. 5 and 6, No. 4.) Defendants did not answer the part of this interrogatory asking them to state the specific factual basis on which the exemption was claimed, other than to make erroneous argument.

---

[1] *But see Smith v. City of New Smyrna Beach*, No. 6:11-CV-1110-ORL-31, 2011 WL 6099547, at *1 (M.D. Fla. Dec. 7, 2011) ("While affirmative defenses may not have to meet the *Twombly/Iqbal* standard, they must be more than boilerplate.").

That statute, section 213(b)(11), applying to "any employee employed as a driver or driver's helper," requires two things: (1) that the employee be "compensated for such employment on the basis of trip rates, or other delivery payment plan," and (2) that the Secretary of Labor himself approve the payment plan.

This exemption doesn't apply. Kerns was paid a flat amount per week, not on the basis of a trip rate. (Ex. 9, Kerns paystubs; Ex. 1, A. Lamot Dep. 39:22-40:5 (salary between $200 and $350 a week); Ex. 3, Kerns Decl. ¶ 3.) A trip rate would have required the Defendants to pay Mr. Kerns X dollars per trip or per mile, which did not happen. And no one at the Defendants contacted the Department of Labor for specific approval on Mr. Kerns's pay plan either. (Ex. 2, A. Lamot Dep. 28:24-29:7 (no consultation with anyone about this exemption).) Accordingly, they stated no valid exemption and have no facts to support it.

Defendants' position on the FLSA exemption has been a moving target, however, because they informally asserted two other

exemptions. Discovery is closed and Defendants should not have a chance to change the answer they stated four times in their interrogatories. But just to lay any exemption issue to rest, here are the two other exemptions Defendants have advanced:

**Kerns was "a manager."** Lamot Industries' interrogatory response no. 5 makes this deficient case: "To the best of Alisha's understanding, in the State of Florida, 'managers' are exempt from overtime wages." (Ex. 5, Lamot Industries Resp. to Interrog. No. 5.) But Mr. Kerns was not a "manager." And Defendants abandoned this argument in their own motion for summary judgment. (ECF No. 37.)

**Motor carrier exemption.** Defendants asserted in their motion for summary judgment, ECF No. 37 at 8-11, that Mr. Kerns is exempt from the FLSA on the basis that he was a "driver's helper," *id.* at 9. The "driver's helper" exemption is part of the motor carrier exemption. Defendants misconstrue the law.

As a procedural matter, the Defendants raised this *only* in their motion for summary judgment. They never put this exemption into

their answers or the July 2016 discovery response that demanded it. They have had eight months to amend these documents. They haven't even tried. They should be estopped from asserting this baseless defense now.

In any event, it is not a sound defense. The motor carrier exemption to the FLSA is set out at 29 U.S.C. § 213(b)(1). The first thing to note is that it is an exemption from the overtime rules *only*. Mr. Kerns's minimum wage claim is not affected by this exemption.

The motor carrier exemption exempts "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service." In other words, it applies to employees whose driving of heavy vehicles can be regulated by USDOT *for safety reasons*. *See* 29 CFR § 782.2(a). For that reason, the exemption only applies if the employee drives vehicles weighing greater than 10,000 pounds. *Roche v. S-3 Pump Serv., Inc.*, 154 F. Supp. 3d 441, 448 (W.D. Tex. 2016). This exemption doesn't apply because the Defendants conceded that Mr. Kerns never drove

such a heavy vehicle. (Exs. 7 and 8, Defendants' Resp. to Pl's 1st RFA No. 4; Ex. 3, Kerns Decl. ¶ 11.)

Defendants argued in their motion for summary judgment that in 2008, the weight restriction was removed ("after 2008, the statute again made vehicle weight immaterial" (ECF No. 37 at 9, n.3)). This is just not accurate. *Roche*, a 2016 case, makes that plain. If Defendants are right, and any employee who drives any vehicle is exempt from the FLSA, then hundreds of FLSA trials have been for nothing. Pizza delivery drivers, cable TV technicians, and newspaper boys are all exempt. An actor who drives across town once a year to another theatre is exempt. This is not the law.

Defendants' argument comes out of a misquoting of *Hernandez v. Brink's, Inc.*, No. 08-20717-CIV, 2009 WL 113406 (S.D. Fla. Jan. 15, 2009), a case Defendants rely on heavily. (In fact, their only other two motor-carrier cases, *Baez* and *Alvarado* are cited in *Hernandez* also.) The *Hernandez* court correctly understood that the motor carrier exemption comes into play only if "the Secretary of Transportation

14

has jurisdiction over the carrier." *Id*. at *5. In that particular case, the court had to deal with the fact that Brink's operated a "mixed fleet of vehicles" which had weights both over and under 10,000 pounds. *Id*.

This case and this exemption have no serious relevance to the Defendants' businesses: Neither Defendant *is* a "motor carrier." Mr. Kerns wasn't a Brink's truck driver; he was an office employee who occasionally drove to the dock in a pickup truck to get a load of vacuum cleaners. This is not the kind of safety-affecting, heavy goods operation the motor carrier exemption covers. There is no evidence in the record that could support a jury finding in favor of the Defendants.

Defendants have no valid exemption to FLSA coverage. Summary judgment should be granted for Mr. Kerns on the exemption issue as well.

## III.   RBL Enterprises is the successor to Lamot Industries for purposes of the FLSA.

Federal employment law establishes a doctrine of successor liability for enterprises carrying on the same business and using the same plant. In this case, RBL Enterprises disclaims any responsibility

for Lamot Industries's acts. In reality, RBL is a sham entity set up to evade multiple liabilities, including some owed to Mr. Kerns.

This issue is relevant because for most of his employment, Mr. Kerns was an employee of Lamot Industries. Mr. Lamot testified that RBL Enterprises was started up on December 1, 2015. (Ex. 1, R. Lamot Dep. 22:2-21.) If successor liability can't be established, Mr. Kerns may not be able to obtain full recovery, because Mr. Lamot claims that Lamot Industries is now defunct (and openly admits it has skipped out on other of its debts).

### A.    The federal common law provides successor liability in employment and labor actions.

Generally, corporations are not responsible for the liability of entities they succeed. However, where a claim involves a federal right based on employment law, successor liability steps in. *Teed v. Thomas & Betts Power Solutions, L.L.C.*, 711 F.3d 763, 764 (7th Cir. 2013).

The Eleventh Circuit still hasn't applied the successor liability doctrine in a published case, but has applied it in an unpublished case. *Hatfield v. A+ Nursetemps, Inc.*, 651 F. App'x 901, 905-09 (11th Cir.

16

2016). Moreover, *Hatfield* cited with approval a Middle District of Florida decision applying the doctrine and finding that that every other court to consider the issue applies the doctrine, too. *Glausier v. A+ Nursetemps, Inc.*, No. 5:11-cv-Oc-416-10PRL, 2015 WL 2020332, at *5-6 (M.D. Fla. May 1, 2015). Finally, Defendants concede the doctrine exists. (ECF No. 37 at 4.)

The basis for successor liability is the FLSA's important remedial purpose assuring minimum wages "to those workers on the low end of the labor market." *Glausier*, 2015 WL 2020332 at *5. The doctrine operates "to prohibit employers who violated [labor] laws from avoiding liability by selling, or otherwise disposing of, their assets and dissolving." *Hatfield*, 651 F. App'x at 906.

*Hatfield* cited a leading case—*Teed*, above—and borrowed its five-factor test. *Hatfield*, 651 F. App'x at 907 (citing *Teed*). The test is whether:

> (1) the successor had notice of the pending action;

(2) the predecessor would have been able to provide the relief sought in the action before the sale;

(3) the predecessor could have provided the relief after the sale (its inability to provide relief favors successor liability);

(4) the successor can provide the relief sought in the action; and

(5) there is continuity between the operations and work force of the predecessor and the successor.

*Id*. (punctuation omitted for clarity).

*Hatfield* helps employees whose companies are sold out from under them, and where the purchasing company would disclaim federal employment liability. That is why *Hatfield* tests whether the successor knows of claims, has the ability to pay them, and whether the predecessor is unavailable to pay them. Because Mr. Lamot formed, owned, and owns both Defendants 100% (ECF Nos. 8 and 9, corporate disclosure statements), *Hatfield* factors (1) through (4) are established without dispute. Mr. Lamot can't argue that Company #2 was unaware of liabilities of Company #1—*he is both Companies*. The

18

only factor plausibly open to dispute is factor (5), continuity in operations and workforce.

### B.   RBL Enterprises has complete continuity in operations and workforce with Lamot Industries.

Here are the facts: Lamot Industries was in existence from April 2012 until about December 1 or 15, 2015. (Ex. 2. A. Lamot Dep. 15:7-9 (opened); *id*. 36:21-24 (closed on Dec. 15); Ex. 1, R. Lamot Dep. 21:9-22:6) (closed on Dec. 1).)

One of the admitted reasons for starting a "new" company was so that Ryan Lamot could evade unpaid rent, and other debts, that he owed in the name of Lamot Industries. (Ex. 1, R. Lamot Dep. 40:2-12 (did not pay all of its rent); *id*. at 37:23-39:9 (Lamot Industries owes money to an "unknown company" Mr. Lamot cannot remember the name of); Ex. 2, A. Lamot Dep. 17:22-18:12 (did not pay back rent; "had other debts that it had not paid"; "most" debts were "never paid").)

But in "starting" his "new" company RBL Enterprises, Mr. Lamot changed nothing material. RBL Enterprises, like Lamot Industries,

carries on the same business of being a Kirby distributor. (Am. Ans.,

ECF No. 14 ¶ 15.) RBL Enterprises uses the same:

- Employees—including Mr. Kerns and the Lamots. (Ex. 1, R. Lamot Dep. 43:7 - 9 ("Q. And you carried over at least one employee; correct? A. Yes."). (RBL Enterprises claims it *had* only one employee, so that's all of them.)

- Stock and inventory of products for sale. (Ex. 2, A. Lamot Dep. 38:4-20). Mr. Lamot holds title *personally,* not in the name of any company. (Ex. 2 at 39:5-11 ("Ryan owns it").)

- Vehicles. (Ex. 1, R. Lamot Dep. 42:4-13 ("a red van").)

- Computers. *Id*. at 43:14-44:6 ("Yeah, I'm sure.").

- Office furniture. *Id.* at 44:7-11.

- Business management software, which is called BizTrack. *Id.* at 44:1-6 ("Yes, still use the same system."); *see also* Ex. 12, RBL Enters. Dep. 27:13-28:20.

- Payroll system. (Ex.9, Kerns paystubs from identical system; only the company names are different.)

- Product line—no more and no less. (Ex. 12, RBL Enters. Dep. 13:10-16.)

- Prices. *Id*. at 13:23-24.

- Accounting rules. *Id*. at 29:14-19.

- Counsel and answer in this action.

According to RBL Enterprises itself, there was simply no "real difference between the businesses." *Id*. at 13:6-9. Moreover, Mr. Lamot's job was *identical* too—he did "exactly the same thing for both companies." *Id*. at 61:17-19.

Mr. Kerns's argument on successor liability is stronger than in *Hatfield*, *Teed*, and other successor liability cases, because here, the owners and managers of Lamot Industries and RBL Enterprises are also *identical*. Ryan Lamot is the sole owner of both. Mr. Kerns isn't trying to tax some new "successor" owner with an old owner's debts; Mr. Lamot is the man behind both entities (which he named after himself).

Lamot and his companies can point to no facts which distinguish the Defendants from each other when viewed through the lens of federal employment law. Accordingly, Mr. Kerns is entitled to summary judgment on successor liability.

## IV. Certain of Defendants' affirmative defenses have no merit and there is no evidence to support them.

Finally, Mr. Kerns seeks summary judgment on several conclusorily-pleaded affirmative defenses of both Defendants (ECF No. 14). These defenses, and brief argument, follow. **Note:** These are the same affirmative defenses Mr. Kerns challenged on September 1, 2016. (ECF No. 19.) The Defendants didn't oppose summary judgment as to any of them. (ECF No. 31.)

**Aff. Def. No. 1.** This affirmative defense argues that Mr. Kerns "fail[ed] to state a claim . . . for which relief may be granted." This defense is procedurally invalid as it should have been presented in a motion filed under Rule 12(b)(6) prior to the Defendants' answering. Also, the substance of the defense—that Mr. Kerns was unclear as to which company was his employer—is vitiated by the arguments on successor liability just made.

**Aff. Def. No. 2.** Same as with the previous defense.

**Aff. Def. No. 3.** This defense claims "exclusions, exceptions," etc. that are "permissible under the FLSA." The answer never identified

them, and as previously stated, the Defendants never came forward with any entitlement to an exemption during discovery.

**Aff. Def. Nos. 5, 6, 7, and 8.** These defenses all essentially assert that Mr. Kerns himself is responsible for the Defendants' own illegal pay practices in that he failed to mitigate his damages, or ratified their illegal conduct. But in the absence of a bona fide dispute, an employee cannot waive his own right to be paid in accordance with the FLSA. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945). It is absurd to place the burden to comply with a remedial employment statute on the employee. Moreover, the duty to maintain accurate records of time worked falls directly on the employer, 29 CFR § 516.2(a), and the Defendants admit they kept *none*. (Exs. 10 and 11, Defendants' Resp. to Pl.'s 2nd RFA No. 8.)

## CONCLUSION AND RELIEF SOUGHT

The Plaintiff seeks summary judgment as argued above and asks that the following are deemed established:

- That the FLSA covered the employment relationship between him and both Defendants.

- That the Defendants can claim no exemption from the FLSA.

- That RBL Enterprises is the successor to Lamot Industries for all purposes relevant to this action.

And also asks the Court to rule:

- That the Defendants' affirmative defenses numbered 1, 2, 3, 5, 6, 7, and 8 are struck from the action.

### CERTIFICATE UNDER LOC. R. 7.1

Many attempts to resolve these issues by stipulation were made,

and rejected. Specifically:

- At the April 27, in-person Rule 26(f) conference (affirmative defenses).

- In a call and letter on June 3 (FLSA coverage issue, no exemptions, successor liability).

- In a call and follow-up e-mail on June 9 (no exemptions).

- In a letter on June 22 (FLSA coverage, no exemptions).

- In person on June 29, immediately after Mr. Lamot's deposition (FLSA coverage, no exemptions, successor liability).

- In an e-mail on July 22 (no exemptions).

- In a letter on August 22 (FLSA coverage, no exemptions, successor liability).

- In other in-person, phone, or written conferences prior to September 1, 2016.

- At additional times after that, as evidenced by the parties' continued discussions. (Ex. 13.)

Defendants have not entertained resolution of any of the issues

raised on this motion.

## CERTIFICATE UNDER LOC. R. 7.1(F)

This brief contains 4,243 words as measured under Loc. R. 7.1(F).

Respectfully submitted,

/s/ William F. Cash III
William F. Cash III (Fla. Bar No. 68443)
Brandon L. Bogle (Fla. Bar No. 52624)
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
Phone: 850-435-7059
bcash@levinlaw.com
bbogle@levinlaw.com
*Counsel for William Kerns*